Good morning, your honors. May it please the court, counsel. My name is Andrea Clare, and I'm here on behalf of Bill Brownfield, the appellant in this matter. Before I delve into the merits, I just wanted to mention two things briefly. First of all, the appellee Evans' brief falsely certifies that it's in compliance with the Federal Rules of Appellate Procedure in that it exceeds the page limitation extensively. And so, therefore, Bill Brownfield would ask that the court strike those noncompliant portions. How are they not complying? His brief was supposed to be 15 pages. It's 45 pages. It also exceeds the word limitation. It's supposed to be 7,000. It's 11,000. In addition, Mr. Evans has also filed supplemental excerpts of the record, which includes portions that were not considered by the trial court. They were portions from another court, the bankruptcy court, excerpts of pleadings and transcripts most likely submitted to cast Mr. Brownfield in an inappropriate light. In any event, they weren't considered by the trial court, and they're not appropriate to be reviewed. Those pages are 84. You say they're not even part of the trial court record. They're not even in the trial court record. They're taken from a bankruptcy court in a completely different cause number. They weren't considered before they were taken place eight months after the court had already decided. So they should not be considered by this court. This appeal by Mr. Brownfield was taken up because on one issue, and that's whether or not the court inappropriately granted summary judgment in favor of Mr. Evans. That's the only issue here today is whether or not they erred. Mr. Brownfield asked for summary judgment based on certain promissory notes, about six promissory notes, whether or not they were valid on their face, whether or not they posed a conditioned precedent on their face according to their plain, ordinary meeting. In response, a cross-motion for summary judgment was filed by Mr. Evans, suggesting that declaratory judgment should be rendered, finding the notes payable on demand, that the source of funds is not limited to a certain source, and that there are community obligation and that judgment is appropriate. Mr. Brownfield argued that the court should focus on the face of the notes and determine whether or not, as a matter of law, a condition exists. And then Mr. Evans suggested that an employment agreement somehow changed or modified those notes and changed that obligation into a personal obligation. And Mr. Brownfield suggests that it doesn't. The court went above and beyond both of the parties' suggestions and erred in two respects. It either prematurely determined summary judgment because there was issues of fact and or it incorrectly decided altogether. Mr. Brownfield asked that the notes be constructed as a matter of law, that the court look at its face and make a determination construing the contract. The court rather interpreted the meaning of the contract by looking at circumstances surrounding facts. And they erred by analyzing questions of fact, which should have more appropriately been addressed at hearing on the merits. In addition, the court did not view the facts in the light most favorable to the nonmoving party, Mr. Brownfield. He submitted several affidavits which indicated, I never promised to pay Mr. Evans anything. During employment, other companies were formed, and he was given a minority interest but never had a say. And no dividends were ever paid or expected. In another affidavit, he suggested that he never agreed to personally make contributions ever. Each note provides where the source was to come from. In his answer to the complaint, he said the agreement pertaining to the notes had never changed or been modified. It was never meant to be a personal obligation. In addition, the court erred by interpreting Voight inappropriately. The court relied extensively on Voight. It indicated that the court found basically wherever there was a, wherever, whether the provision is a condition depends on the intent of the ascertained from the fair reasonable construction of the language used in light of all the surrounding circumstances. Again, creating an issue of fact. The court found all six notes, no words of condition of intent were present. Although the notes specifically said this amount is to be repaid in full from the first profits. And then the court found a preference in Washington to interpret ambiguous provisions as promises, but never indicated which provisions was exactly ambiguous. Then the court found that the circumstances suggested that the notes are unconditionally, create an unconditional promise. And there's not a mention of a promise whatsoever in the notes at all. The court said three pieces of evidence suggested it's an unconditional promise. Minutes from the first annual meeting, which is disputed by Mr. Brownfield. He was not present, nor is it signed. The final four notes were amended to include or as otherwise agreed, which is an ambiguous provision itself. And then the July 1st, 2003 employment agreement, which changed the, or included the payment plan as agreed in separate documents. Another ambiguous provision. Therefore, the court found at the time of the creation of the promissory notes, the parties must have intended this repayment to be unconditional. And found that the notes were personal obligations. The Voight court was different. In that case, the notes actually said or actually expressed a promise to pay on the face of the documents. It was an installment note, and it had specific dates for these payments. The final sentence in those promissory notes said the money is to come from cottage rental proceeds. And that's where the court had said, does this create a condition precedent? The court in Voight recognized that the documents were governed by the uniform commercial code. It looked to the intent of the parties, finding the parties' relationship, their situation, the intended purpose, the subject matter in which the contract was created. But ultimately in Voight, the court found a question of fact. Whether or not the notes intended to be a condition to those funds. And it also found that the doubt was to be resolved in favor of a promise, because the parties couldn't even discuss the intent in that case because of the dead men statute. You want to save a couple minutes? I'm sorry? I do, yes. Why don't I go ahead and just stop right there if you don't have any questions. You may have gotten in 45 extra pages, but you talk so fast you get in 100% of the words. Yeah, I have lots of time, so let me just stop right there. Yeah, you'd be a good radio announcer. All right. Ah, the clock's running while you're shuffling your papers, you know. I think I can be brief. Just like the billing clock runs. Go ahead. Good morning, Your Honors, and may it please the court and counsel. I'm George Jarend. I represent one of the parties below, Bob Evans, as well as some parties who are not parties to this appeal, Keystone Fruit Marketing and some third-party defendants, Walla Walla Keystone and Walla Walla River Farms. But today I'm here on behalf of Bob Evans, and I was surprised to learn that there may be an issue, at least as far as counsel is concerned, with the length of our brief. Our certification of compliance with the federal rules of appellate procedure and local rules is on page 46 of that brief. And I was also surprised to find that there was any concern about the pleadings that were made, part of the appellate record, which were taken from the trial court record in this case. The bankruptcy court findings, the Eastern District Bankruptcy Court, Judge Kurtz found that the Brownfields had filed bankruptcy in bad faith the first of two times, two bad faith bankruptcy filings he found in order to delay and frustrate this litigation. That was included in this record because I know this Court is concerned with cases where part of the case is certified as final for appeal before the entire case has been concluded. And so those were submitted in support of the certification that Judge Whaley made that this case was right for appeal. The facts of this case are not limited to the face of these promissory notes, but the course of dealing. Well, what's that with the face? Are these demand notes? Yes. Why? Well, there's really three reasons. Number one, there's no time stated for repayment. That is, in black letter law, a demand note. Second reason, the demand nature of the notes was confirmed. It says the amount is to be repaid in full from the first profits generated in my name from the Walla Walla Keystone LLC. So you have some indication of a time to be repaid from the first profits. I think that's an excellent point, that you could infer a time from that condition language. The existence of the condition has always been treated by the parties in the Court below as a separate issue from the demand nature of the notes. No, but it is. If you have a conditional promise, it's not a demand note. Here is a condition. It's conditioned on there being profits. There may or may not be. You don't know when they'll be. Anybody reading that would know that's not a demand note. I mean, I can't imagine how you persuaded the judge to say it was. Well, there's a couple reasons, because notes often recite the contemplated source of repayment. Maybe they do, but they don't say conditioned on. But this note doesn't say conditioned on either. And if this note did say conditioned … Is to be repaid in full from the first profits generated. That's how you're going to repay it. And under Washington law, the Voight case, which all parties rely on, and I've shepherdized as recently as a couple days ago, and is still controlling Washington law on the subject, that language that you just read from these promissory notes does not create a condition as a matter of law. It could be a condition, or it could merely be a statement of intention, a recital of the intended source of repayment for the notes. What was the language in the Voight case? From proceeds of rental cottage. Almost identical. From first profits versus from rental proceeds. Who drafted this note? I believe it was taken from a form book by the parties. I don't know. I don't think the record reflects that either party drafted. I want to say that Mr. Brownfield took it out of a form book, but I can't give you a page citation in the record to that. And what seems to me a condition is doubled by saying either that or as otherwise agreed, and we don't know how it's otherwise agreed. You can't tell that from the note. But you can tell it from the party's extended multi-year course of dealing. Oh, you can, but you can't tell it from the note. I agree. You can't tell what or otherwise agreed means from the note. It doesn't mean anything. It's an agreement to agree. It sets a condition, which you were told to look for, but you don't know where, you don't know what it is. It's just it is a kind of condition, but it's a very stupid condition, but there it is. And where I would respectfully disagree with, Your Honor, is it doesn't set a condition. It just says there's a possibility of future agreement or as otherwise agreed. And in this case, we do. Look, you're given two ways this will be paid from the profits or as otherwise agreed. Aren't those choices there in the note? The answer is no. And the reason is that recital language about where the source of the anticipated source of repayment comes from is not a condition. Under Washington law, that is not a condition. And over the party's multiyear course of dealing, they did not treat it as a condition. So in July 1st of 2003, Mr. Brownfield, in another signed writing, which is in the record, agreed to start making minimum payments, $2,000 a month. That doesn't retroactively make you know the demand, though. How do you still start with the or as the alternative? If that isn't a condition, what could be a condition? Do you have any Washington law saying as otherwise agreed is not a condition? There is no law. I would rephrase your question and say there is no Washington law which would suggest that that or otherwise agreed language, and I'm not aware of any from any other jurisdictions that would suggest that is a condition. Or as otherwise agreed is simply an agreement perhaps to agree in the future, which isn't a condition at all. And the fact that it's phrased in the disjunctive or means that, you know, it doesn't necessarily even apply unless there is another agreement. And there was another agreement. Bob Evans and Bill Brownfield. There's another agreement, and then you have a trial. You don't have a summary judgment. The other agreement, and none of this is disputed. The reason you don't have a trial is because the facts aren't disputed. The legal significance of the facts is what is at issue here. And when the legal significance of the facts is at issue, that is precisely the case where you have summary judgment. And the legal significance of these notes, the language in light of the Voight case, which says, okay, you look at the circumstances if you've got a recital of the source of fund language. So you look at the circumstances. Brownfield agrees after entering these notes, receiving $300,000 and paying a portion. He agrees to make minimum payments. Okay. The fact that he agreed at Bob Evans' request. That's later on, right? And it does two things. That is an end. That's later on, is it not? It is in the middle. Or in the middle. Yes. It's not when he signs the notes. It's before he signs some, and it's after he signed others. That agreement to make minimum payments both confirms, I mean, that's an independently enforceable agreement itself. And that's in the record. And that's part of this. The idea that it is agreed to upon demand by Bob Evans and the fact that it specifically characterizes these payments as minimum payments confirms that Bob Evans had the right to demand a maximal payment up to the full amount of the notes. You don't know. It says that he would pay, you know, at a minimum at least this amount. Right. It was up to him to decide what he was going to pay. Was he going to pay anything above the minimum? And the answer is, I think, that the way that the testimony came in, and I don't think that this is disputed, is that Bob Evans — it's not disputed until after the fact, after a lawsuit arises. But during the party's course of dealing, Bob Evans did go to Bill Brownfield and ask for more money, and he made a lump sum payment of $51,000 in June of 2004, confirming that when we're talking about minimums, it's Bob Evans' right to request payments, not Bill Brownfield's discretion. Counsel, you seem to be confused. One question is, are these demand notes? Another question is, is there a debt here which, if properly sued on, could be collected? I think there's some evidence that there is a debt which you can collect. There's no evidence in my mind that there's a demand note. And you're conflating the two. And I don't want to do that. The reason that — and I don't — so I don't want to do that. The reason that there's no demand is that there is no time stated for repayment. That is — and there is no condition stated for repayment. And the reason those arguments get conflated is because, at least as I'm understanding Your Honor's question, you're suggesting that the existence of a condition deprived this note of its demand character. Our argument, and I think that this is amply supported by the Voight case and by the facts of the record which show the parties' course of dealing, there was no condition. So that takes care of that aspect of the demand question. The reason there's no condition is because the parties didn't act like there was a condition. And that language under Washington law does not create a condition. You need language under the Voight case that says on condition from, on condition that, or payment only from this source. Otherwise — and this is because Washington courts want notes to be enforceable. When a party loans $300,000 or almost $300,000 to another party, the presumption in law in the State of Washington is that that should be repaid. But there was more here than that when they formed this new business. I think it had to do with onions, right? It did. Yes, with onions. And they wanted Brownfield. They wanted him in it because he was a very valued employee. And he didn't have any money. So they said, well, you come with us. And he said, well, I don't have any money to go into it. I'm just thinking about it the way you might think. He said, well, you come on in and we'll put up the money. And then when we make money, you can give it to us back. I mean, that's what you'd think would happen here. Actually, we know what happened here because we have in the record, and it's on page 28 of the supplemental excerpts of records, the minutes of the annual meeting of this LLC that was formed to finance and for which these notes and loan installments financed Bill Brownfield's part. What did the minutes say? They say that it is anticipated all three of the members agreed, and I'm reading directly from supplemental ER page 28, all three of the members agreed that Bob Evans and Kurt Schweitzer would personally loan to William G. Brownfield funds necessary to make contributions to the company during the 2001 business year and for similar contributions in future years. Said personal loans will be repaid to Bob Evans and Kurt Schweitzer out of the profits of the company. However, if the company does not generate sufficient profits to repay said personal loans, then the parties will make other arrangements for the repayment of said loans. And that's the agreement that the parties had at the inception of their relationship. And then we see they made eight loan installments. So they make other arrangements. If he doesn't agree to the other arrangements, you've got no other arrangements. And the other arrangements that he made were he signed these promissory notes, which I think on their face are neither conditional nor is there any reason why they shouldn't be considered demand notes, as Judge Whitt held. The other arrangements could have been, well, we're not doing as well as we're doing. We thought we were going to do better, so we'll stretch it out. And it could have been all other kinds of arrangements. Well, and we do have some. They knew he didn't have the money. That's why they loaned it. They put it in for him. I mean, he did not want to make, I don't know if he had the money, and the record doesn't reflect what he had. I mean, the record does reflect he was making $350,000 a year. And so he had some money, but that's not a record question, and that's not a question we need to answer. I think the important thing is that after this agreement is reflected in the minutes, and that's not disputed, then the parties, he receives eight installments over four years. He executes six promissory notes, plus an agreement to make minimum payments, plus when a lump sum payment in excess of $50,000 is requested, he makes it on demand. Is this fraught with jury questions? And respectfully, I would ask, so that I may respond to them, what would be the jury question? This whole transaction from the beginning to the end is fraught with questions. What was the intention of the parties? What did they mean by whatever the term was, we'll make other arrangements? It goes on and on and on. And maybe the purpose of inserting the clause, you pay us back from the profits. I mean, maybe he had money. Maybe he said, I don't want to risk my money. I don't want to risk my money. You want me, you put up the money, and if we make money, whatever my stake would be represented by the money you put in, you take it off the profits as they come in until you get paid, and then I participate. I mean, there's all kinds of ways. You got the material for a good trial, and you may win, but you won a little too soon. I think the answer to that question is if the kind of speculation that we're engaging in right now were reflected in the record, Mr. Brownfield may well have created a genuine issue of material fact. Those kind of facts are not in this record. The record that we have is an agreement. You draw inferences from the record. But the only inferences, the only record that you can draw those kind of inferences Let me say it this way. In looking at the agreement reflected in the minutes of the company, in looking at the notes themselves under controlling Washington law, in looking at the July 1, 2003 agreement, in looking at the history of making payments upon demand, I would suggest that, and I'm not going to be standing up here and telling this court what inferences it can or cannot make, but I would respectfully suggest that on this record, those inferences have no support, that everybody treated this like an obligation that was unconditional and payable on demand. And the only reason Why didn't you write it up that way? I don't have a good answer for that, Your Honor. As often the case, the reason we're here is things don't get written up that way. Who wrote the minutes? The corporation, the corporate secretary, Kurt Schweitzer, who is not a party. He wrote the minutes up. Did Brownfield approve those minutes? I didn't even look at them. The record does not, in the record, he takes no issue with the minutes, and I have no reason to believe that he disagrees with it other than the contrary statements that he makes after a dispute arises between the parties, saying, I never promised anything, I never agreed to pay anything. And the important thing is that only happens after a dispute arises between Mr. Brownfield and some of these other companies. That's why you tie everything down at the beginning, because a dispute might happen if it wasn't done. I agree, and I try and tell my clients that every time they commit. They should have come to you instead of typing these things up themselves out of some form book. It doesn't even say that it's going to be a promissory note. It doesn't say. It says promissory note. Where does it say? Pay to the order of, huh? You got that? Where does it say that? It doesn't say order of. So it's not a promissory note. I would beg to differ. That may mean it's not negotiable, but that doesn't mean that it's a valid and binding contract between the parties. It's promised to pay, but it's not negotiable. So you have a misnomer there, promissory note. It's not a promissory note. I think it would only be a misnomer if it represented itself as a negotiable instrument. I gave you a true and false question and put this in there and said, is that a promissory note, yes or no? And you put yes. We dock you one point and then take another one off. That's what they do. And I certainly don't want to be docked any points. There's a law professor here. Berkeley. So if Mr. Brownfield had developed that record, frankly, if he had been able to attest to those facts, all we have in the record from Mr. Brownfield is self-serving and conclusive allegations that fly in the face of the entire course of dealing with the parties and which is not even recognized by counsel in their briefing or in the argument here today. We've given you about twice the amount of time, Your Honor. Are you going to go on? No, Your Honor, unless there's any further questions. Okay. You've taken 16 minutes instead of 18 minutes instead of 10. We've been asking questions. We have, but you've gone on and on. I certainly do not intend to try your patience. So unless there are any further questions, I'm happy to conclude. Oh, yeah. It's interesting, this case. Time flies when you're having fun. It always does. Don't worry about it. Thank you, Your Honor. Okay. Thanks. All right. I will come to Les Hagel versus. Are you going to let the girl reply? Rebuttal? Oh, rebuttal. I had just a few minutes. You've got to rebut. I'll try to just briefly address. You don't have to. I don't have to? Well. If you want to. Let me. I might as well. I just wanted to announce that, you know, there's an argument that these are demand notes because they don't have any, even though they don't have any definite time of payment and that they're not conditioned, but they are strikingly lacking a promise to pay. Several cases cited in my brief suggest that a promise is a written undertaking to pay money. A simple acknowledgment that he borrowed money is not sufficient to constitute a negotiable instrument or a promissory note. All right. You know, don't push your luck. Okay. Thank you. All right. Let's go on to Hagel versus Astru.
judges: Pregerson, Hall, Noonan